UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY KRUG, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION - LAW |
| | : | |
| - against - | : | |
| | : | JURY TRIAL DEMANDED |
| BLOOMSBURG UNIVERSITY, | : | |
| PENNSYLVANIA STATE SYSTEM | : | |
| OF HIGHER EDUCATION, | : | |
| BASHAR HANNA and | : | |
| JAMES KRAUSE. | : | |
| | : | No. 4:18-cv-1669-MWB |
| Defendants. | : | |

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND IN SUPPORT OF CROSS-MOTION TO COMPEL

DYLLER LAW FIRM          LAW OFFICE OF PATRICK T. O'CONNELL

s/ Barry H. Dyller        Patrick T. O'Connell
Gettysburg House          24 West Main Street
88 North Franklin Street   Bloomsburg, PA 17815
Wilkes-Barre, PA  18701    (570) 380-1280
(570) 829-4860            Attorney for Plaintiff
Attorney for Plaintiff

Plaintiff Jeffrey Krug ("Dr. Krug"), by his undersigned attorneys, respectfully submits this brief in opposition to Defendants' Motion for Protective Order (Doc. 49) and in support of Dr. Krug's Cross-Motion to Compel.

## FACTS RELEVANT TO THE MOTION AND CROSS-MOTION

Nature of the Case

Dr. Krug was the tenured dean of the Bloomsburg University College of Business.

Jane Doe 1 was the secretary to the president of the university, defendant Bashar Hanna.  Jane Doe 1 came to Dr. Krug's assistant, Jane Doe 2, to discuss and complain about Hanna's sexual harassment of her. Together, Jane Does 1 and 2 discussed Hanna's sexual harassment with Dr. Krug.  In turn, Dr. Krug and Jane Does 1 and 2 reported the sexual harassment to the University's Director of Social Equity.

Soon thereafter, all defendants began a campaign of retaliation against Dr. Krug, which led to his termination on a pure pretext.

History of Discovery in this Case and the Discovery Dispute

On October 4, 2018, Dr. Krug's counsel served Plaintiff's First Request for the Production of Documents on defense counsel.[1]

On October 11, 2018, Dr. Krug's counsel served a Subpoena to Produce Documents on non-party Kutztown University.

On November 6, 2018, Dr. Krug's counsel served a Subpoena to Produce Documents on non-party Ballard Spahr, LLP.

As discussed in more detail below, while many documents have been produced, defendants have interfered with the production of documents by the non-parties, and slow-walked the production of other documents.  Dr. Krug's counsel have been patient, but despite gentle prodding have been unable to convince defendants to provide legible, sensible privilege logs.

Finally, as Dr. Krug's prodding defendants to comply with their discovery obligations has continued, defense counsel has insisted on a confidentiality stipulation or protective order, for no apparent reason other than that they want one.  However, as discussed below, defendants do not meet their burden to justify a protective order.

---

[1] Because the Document Request contains the names of the Jane Does and others, we are not submitting it herewith, but will provide it if the Court desires.

2

Defendants' Initial Production and Their Privilege Log[2]

On January 25, 2019, defendants provided a privilege log, a copy of which is attached to the accompanying Cross-Motion as Exhibit A. It is only a slight exaggeration to state that it is impossible to read the privilege log without risking blindness. Also, on January 25, 2019, Dr. Krug's counsel, having attempted to review the privilege log, requested a discussion with defense counsel.

On January 29, 2019, defense counsel agreed she would review the withheld documents and possibly narrow the documents withheld on account of privilege, and produce a revised privilege log. This was part of good faith discussions to resolve a discovery dispute.

On March 6, 2019, Dr. Krug's counsel again emailed defendants' counsel. The email concerned multiple document discovery issues. It documented that defense counsel had promised to provide a revised and legible privilege log, and to remove from it and produce documents which never should have been withheld in the first place.

The March 6, 2019 email also discussed defense counsel's promise to review and produce the documents Dr. Krug had subpoenaed from

---

[2] Unless otherwise noted, the recitation below is all documented in email exchanges. A copy of the relevant emails is attached to the accompanying Cross-Motion collectively as Exhibit B.

Ballard Spahr, and to produce a privilege log.  While Dr. Krug's counsel did not agree the procedure was correct, they agreed to let it occur because it might prove to be a non-issue.  However, as reflected in the March 6, 2019 email, defense counsel did not produce documents or a privilege log in the time allotted.

On March 20, 2019, undersigned counsel addressed these issues (and one other issue concerning a non-party, which has subsequently been resolved) with the Court.  (Doc. 38; included with Exhibit B hereto).

On April 12, 2019, defense counsel provided a separate privilege log identifying 397 withheld Ballard Spahr documents (Cross-Motion, Exhibit C).  On April 12, 2019, Dr. Krug's counsel addressed some of the more obvious defects or improperly withheld documents.

The Kutztown University Subpoena,
Production and Interference by Defendants

On October 11, 2018, Dr. Krug served non-party Kutztown University with a subpoena to produce documents concerning defendant Bashar Hanna, who had previously worked at Kutztown University.  Without fanfare, on October 26, 2018, Kutztown University partially complied with its obligation to comply with the subpoena and to produce documents.

Months later, however, a newspaper article was published which indicated the existence of certain other, unproduced Kutztown University documents about Hanna.  Dr. Krug's counsel read the article and learned about the additional, unproduced documents.

On May 3, 2019, counsel emailed Kutztown University's legal counsel to inquire about the unproduced documents and request their production as required by the subpoena.  Dr. Krug's counsel sent copies of the email to defendants' counsel.  On May 9, 2019, Kutztown University's counsel responded and stated that she was obtaining and reviewing the additional documents.

At 9:08 a.m. on June 18, 2019, Dr. Krug's counsel emailed Kutztown University's counsel to follow up and remind Kutztown University of its obligation to produce the documents.  That same day, at 6:25 p.m., Kutztown University's counsel responded, and stated that she was not producing the documents at that time because defendants' counsel in this case was seeking a protective order which would "encompass the requested documents."

Because Kutztown University is a non-party entity, and neither it nor defendants made any motion about Kutztown University's documents, the

non-production pending defendants' motion is evidence of defendants' interference and obstruction of the discovery process.

## ARGUMENT

### POINT ONE

#### DEFENDANTS DO NOT MAKE THE REQUISITE SHOWING OF GOOD CAUSE WHICH IS REQUIRED TO JUSTIFY A PROTECTIVE ORDER

"The court may, **for good cause**, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden…." Fed.R.Civ.P. 26(c)(1); emphasis added.  Here, defendants do not come close to meeting their burden of showing good cause for a protective order.

"'Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure.  The injury must be shown with specificity.'"  *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994), quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984).  "'Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning,' do not support a good cause showing."  *Pansy*, 23 F.3d at 786, quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986), *cert. denied*, 484 U.S. 976 (1987).  "The burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on

6

the party seeking the order." *Pansy*, 23 F.3d at 786-87, citing *Cipollone*, 785 F.2d at 1122.

*Pansy* further explained that "privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny." *Pansy*, 785 F.3d at 787.  Here, all defendants are either public entities or high officials of public entities, so privacy interests are minimal.

On pages 6-7 of their brief, defendants list seven factors the Third Circuit discusses in determining whether good cause exists, citing *Glenmede Trust  Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995).  While defendants correctly list the seven factors, they do not analyze this case and the applicability or inapplicability of those factors.  *Glenmede* explained, "'[g]ood cause' is established when it is **specifically demonstrated** that disclosure will cause a **clearly defined and serious injury**," and the burden is on the party claiming confidentiality.  *Id.*, citing *Pansy* (emphasis added).

The *Glenmede/Pansy* Factors

The first *Glenmede/Pansy* factor is "whether disclosure will violate any privacy interests." *Glenmede*, 56 F.3d at 483.  Defendants vaguely state that some documents are "treated as confidential by the University" (Defendants' Brief, at 6), and some documents "relate to sensitive

7

investigations the complaining parties and witnesses were advised were confidential."  (Defendants' Brief, at 9).

These facts, if true, are insufficient to shield the documents from disclosure.  A person or entity cannot make documents confidential by merely treating them as confidential.  To rule otherwise would empower an entity to make any or all documents confidential simply by unilaterally treating them as such.  But an entity cannot have such control, and have its unilateral decision govern a court's decision.

Similarly, advising persons that their statements are confidential cannot take precedence over or govern court proceedings or decisions, or somehow constitute good cause to keep those statements as confidential in a legal proceeding.

The second *Glenmede/Pansy* factor is "whether the information is being sought for a legitimate purpose or for an improper purpose."  *Id.*  It is undisputed that Dr. Krug seeks the information for the legitimate purpose of prosecuting this lawsuit.

The third *Glenmede/Pansy* factor is "whether disclosure of the information will cause a party embarrassment."  *Id.*  Defendants do not make any "embarrassment" argument.  Further, as *Glenmede*

8

acknowledged, it is insufficient to merely describe harm "in generalized allegations of injury to reputation and to relationships."  *Id.*, at 484.

The fourth *Glenmede/Pansy* factor is "whether confidentiality is being sought over information important to public health and safety."  *Id.*, at 483. This factor has a limited role in this motion.  It is important, however, that the public have access to information about whether defendants tolerate sexual harassment or punish persons (like Dr. Krug) who assist victims of sexual harassment by the defendants.

The fifth *Glenmede/Pansy* factor is "whether the sharing of information among litigants will promote fairness and efficiency."  *Id.*  This factor has no role in the motion at this time.  However, this lawsuit is a significant, public lawsuit.  While undersigned counsel have not been retained by other similarly situated victims, there is no reason that the information gleaned from discovery in this case should not be usable in other cases if they exist.  To protect the information and have it available in this case only would achieve the opposite result of the admonition in Fed.R.Civ.P. 1:  The rules "should be construed, administered and employed by the court and the parties to secure the just, speedy, and

inexpensive determination of every action and proceeding."[3]  "Federal courts should not provide a shield to potential claims by entering broad protective orders that prevent public disclosure of relevant information.  The sharing of information among current and potential litigants is furthered by open proceedings….  Absent a showing that a defined and serious injury will result from open proceedings, a protective order should not issue." *Glenmede*, 56 F.3d at 485.

The sixth *Glenmede/Pansy* factor is "whether a party benefitting from the order of confidentiality is a public entity or official."  *Id.*, at 483.  Here, the parties seeking a protective order are public entities and high public officials.  This factors against a protective order.  "The public interest in *Pansy* was 'particularly legitimate' given that one of the parties to the action was a public entity."  *Glenmede*, 56 F.3d at 484, citing *Pansy*.

The seventh *Glenmede/Pansy* factor is "whether the case involves issues important to the public."  *Glenmede*, 56 F.3d at 483.  Here, the

---

[3] A protective order in this type of situation serves to protect wrongdoers from accountability for their actions, because most litigants and attorneys will not have access to the information they need to pursue justice.  The tobacco and health cases are an example.  Through protective orders such as that sought by the defendants here, the tobacco industry was able to keep information from those who needed it, and to win decades of cases without a loss, much to the detriment of the public and the justice system.

allegations are sexual harassment by the president of a public university and retaliation against a person who helped the victim report that sexual harassment.  The issues are wrongdoing by public officials, and sexual harassment and retaliation at the highest level in a public university at which parents send their children.  These are important public issues.

None of these factors favor issuance of a protective order, and most if not all countenance against issuance of a protective order.

Defendants also state without authority that the documents are "exempt from disclosure under the Right to Know Law."  (Defendants' Brief, at 6).  Assuming this to be accurate, it is irrelevant.  *See Pearson v. Miller*, 211 F.3d 57, 61 (3d Cir. 2000) ("[D]iscovery disputes in federal courts are governed by federal law….  [T]he state statutory confidentiality provisions that have been invoked by appellants … do not directly govern the present dispute.").

Defendants do not establish good cause for a protective order.  Any analysis of the factors utilized in such motions demonstrates an absence of good cause – and the burden is on defendants to demonstrate good cause.  A protective order should be denied.

Personnel Files and Internal Investigatory Documents

We are also constrained to discuss the two categories of documents defendants discuss.  On pages 7-8 of their brief, defendants seek confidentiality for the personnel files of defendant Bashar Hanna (the president of defendant Bloomsburg University), and defendant James Krause (the Acting Provost of Bloomsburg University).

Defendants' simple argument belies what is really behind it.  Through discovery and investigation,[4] we know that Hanna was suspended and then terminated from prior employment at Kutztown University (another Pennsylvania State System of Higher Education ("PASSHE") university).  We know that after Hanna signed a formal commitment to work at Ithaca College, he negotiated an approximately $250,000 buyout of his contract with Kutztown University with public money – an act which may constitute fraud, since he was unable to fulfil the contract due to his contractual commitment to Ithaca College.  We know that multiple female faculty members at Kutztown University complained of discrimination by Hanna.  We know that in seeking other employment, Hanna concealed issues and

---

[4] We can prove each of the facts below with documents currently in our possession.  If the Court desires, we can provide the documents.  We would also be glad to have a formal, evidentiary hearing at which we will present the documents and examine witnesses.

fabricated facts.  We learned that in Hanna's employment at Delaware Valley University, his contract was terminated.  We know that Bloomsburg University and PASSHE retained Hanna as its president after that termination, despite a warning about his past behavior (Doc. 1-1) and despite another PASSHE university terminating him and paying a large sum in order to divorce from him.

Hanna and Krause are high officials in a public university.  It would be against the public interest to shield them from public scrutiny.  A protective order should not issue.[5]

On pages 8-10 of their brief, defendants argue that investigatory documents should be deemed confidential because they "relate to sensitive investigations the complaining parties and witnesses were advised were confidential."  (Defendants' Brief, at 9).  As discussed above, just because a public entity wants to shield wrongdoing from the public eye, or makes a promise of confidentiality not based on law, does not somehow transform

---

[5] For this argument about personnel files, defendants cite *Morton v. F.H. Paschen, Inc.*, No. 9607179, 1998 WL 13270 (E.D.Pa. Jan. 15, 1998).  In *Morton*, "[t]he plaintiff agree[d] with the defendant's assertions that a confidentiality agreement [was] warranted."  *Id.*, *2.  Unlike *Morton*, we do not agree to confidentiality.  *Morton* is thus of limited utility.  We do not object, however, to limited redactions of social security numbers and financial account numbers only.

information into state secrets.[6]

Defendants have not met their burden of establishing good cause by **specifically demonstrating clearly defined and serious injury** as required by caselaw.  Defendants' motion should be denied.

POINT TWO

DR. KRUG'S CROSS-MOTION FOR PRODUCTION OF DOCUMENTS
AND LEGIBLE PRIVILEGE LOGS SHOULD BE GRANTED

As discussed and documented in the accompanying cross-motion, defendants withheld documents, provided an illegible privilege log, and interfered with production of documents by non-parties.

Dr. Krug respectfully moves for an order requiring defendants to release the withheld documents to plaintiff's counsel; provide a legible privilege log for all documents withheld, with all information needed for Dr. Krug's counsel to evaluate claims of privilege; provide all Ballard Spahr documents which were previously withheld; and cease interfering with production of documents by non-parties, including Kutztown University, and

---

[6] Defendants cite *Jones v. DeRosa*, 238 F.R.D. 157 (D.N.J. 2006) in support of their argument.  Just as in *Morton*, *supra*, in *DeRosa* the parties "agree[d] that a protective order [was] appropriate."  *Id.* at 166.  Here, there is no such agreement.

inform Kutztown University's counsel to release the remainder of the responsive documents to Dr. Krug's counsel.

## CONCLUSION

Because defendants have not met their burden of establishing good cause by specifically demonstrating clearly defined and serious injury, they are not entitled to a protective order.  Their motion should be denied.

Dr. Krug's counsel patiently worked with defense counsel, but have been unable to convince them to produce the remainder of the responsive documents, or a reasonable privilege log.  Further, defendants interfered with production of documents by non-parties.  Dr. Krug's cross-motion should be granted.


DYLLER LAW FIRM

s/ Barry H. Dyller
Gettysburg House
88 North Franklin Street
Wilkes-Barre, PA  18701
(570) 829-4860
Attorney for Plaintiff

LAW OFFICE OF PATRICK T. O'CONNELL

Patrick T. O'Connell
24 West Main Street
Bloomsburg, PA 17815
(570) 380-1280
Attorney for Plaintiff