**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JEFFREY KRUG,** | : | |
| **Plaintiff** | : | |
| | : | **No. 4:18-CV-1669** |
| **v.** | : | |
| | : | **Judge Wilson** |
| **BLOOMSBURG UNIVERSITY,** | : | |
| **PENNSYLVANIA STATE** | : | **Electronically Filed Document** |
| **SYSTEM OF HIGHER** | : | |
| **EDUCATION, BASHAR HANNA** | : | *Complaint Filed 08/22/18* |
| *and* **JAMES KRAUSE,** | : | |
| | : | |
| **Defendants** | : | |

**PRETRIAL MEMORANDUM OF
DEFENDANTS, BLOOMSBURG
UNIVERSITY, PENNSYLVANIA STATE
SYSTEM OF HIGHER EDUCATION,
BASHAR HANNA, and JAMES KRAUSE**

Pursuant to Local Rule 16.6 and this Court's Date Certain Trial Scheduling

Order (Doc. 123), Defendants, Bloomsburg University, Pennsylvania State System

of Higher Education, Bashar Hanna, and James Krause, through undersigned

counsel, hereby file the following pretrial memorandum.

A.  <u>A brief statement as to federal court jurisdiction</u>.

Plaintiff, Jeffrey Krug, alleges he was retaliated against after he

assisted a student-employee report allegations against the President of

1

Bloomsburg University, Dr. Bashar Hanna, in violation of Title IX, Title VII, First Amendment Freedom of Speech, Due Process Clause of the Fourteenth Amendment, and the Pennsylvania Whistleblower Act.  Krug also alleges Defendants defamed him by spreading false rumors about his personal life. This Court has jurisdiction over a Title VII and Section 1983 claim pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

B.  A summary statement of facts and contentions as to liability.

Krug was appointed Dean of the Zeigler College of Business at Bloomsburg University ("BU") on June 1, 2015. On November 13, 2017, Krug accompanied Angela Crossley ("Crossley"), a part-time student and the executive assistant to President Hanna ("Hanna"), to see the University's Social Equity Director, Robert Wislock. In this meeting, Crossley accused Hanna of certain improprieties.

Robert Wislock informed Krug to keep the contents of their meeting confidential and disclosure of such would violate Bloomsburg University's policies as well as the Family Educational Rights and Privacy Act of 1974 ("FERPA").

Immediately following the November 13, 2017 meeting, the Pennsylvania State System of Higher Education's ("PASSHE") Office of Chief Counsel opened an investigation into Crossley's accusations. During the initial

investigation, it came to Defendants attention that Krug may have disclosed confidential information regarding Crossley's complaint to third parties. PASSHE's Office of Chief Counsel then retained a private law firm, Ballard Spahr ("Ballard"), to investigate the potential disclosure of confidential information by Krug. Ballard's investigation concluded that Krug violated both BU policies and FERPA.

Because the underlying allegations were against the university president, Hanna was instructed to delegate any decision making of an unspecified "personnel matter" to someone else. Consistent with the academic reporting and organizational structure, Hanna delegated his authority to Interim Provost Krause ("Krause").

The independent investigation report concluded that "[Krug] made disclosures of private personnel information and confidential student information to several individuals, and that this information was not of public concern. Of these disclosures, four were made to individuals who did not have a need to know the information; these disclosures, therefore, were made in violation of University policy, improper under FERPA, and breached the confidentiality protections afforded to private personnel information and sexual harassment/Title IX investigations."

A pre-disciplinary conference ("PDC") was held on March 9, 2018,

3

during which Krug admitted making disclosures of information, but denied

disclosing names or titles and made no effort to explain his behavior except to

note that he did not have any mal intent.

Based on the information in the Ballard report, the information Krug

submitted in his written response to the Ballard report, and the information

presented by Krug during the PDC, Krause found it more likely than not that Krug

disclosed personally identifying information.  He concluded that Krug's "failure to

follow University policies and applicable law [were] a serious dereliction of

[Krug's] compliance and leadership responsibilities as the Dean of the Zeigler

College of Business" which limited Krug's "effectiveness as Dean…and create[d] a

significant lack of confidence in [Krug's] ability to fulfill [his] responsibilities."  As

a result, Krause terminated Krug.

Defendants maintain that the termination of Krug was due to his failure to

follow University policies and applicable law and not as a pretext for engaging in

protected activity.

C. A comprehensive statement of undisputed facts as agreed to by counsel at
the  conference of attorneys required by Local Rule 16.3.

The parties agree to the following undisputed facts:

Defendant Bloomsburg University ("Bloomsburg" or "the University" or

"BU"), is an institute of higher education under the control and operation of the

Commonwealth of Pennsylvania by virtue of its membership in defendant

Pennsylvania State System of Higher Education ("PASSHE").  (*Compare* Doc. 80

*with* Doc. 89, ¶ 1).

In the fall of 2017 defendant James Krause was the interim provost at the

University. (*Compare* Doc. 80 *with* Doc. 89, ¶ 3).

Dr. Krug was Dean of the College of Business at Bloomsburg University of

Pennsylvania ("BU") beginning June 1, 2015. (*Compare* Doc. 80 *with* Doc. 89, ¶ 2).

In the fall of 2017 defendant James Krause was the interim provost at the

University. (*Compare* Doc. 80 *with* Doc. 89, ¶ 3).

In July of 2017, defendant Bashar Hanna was named the new president of

Bloomsburg University. (*Compare* Doc. 80 *with* Doc. 89, ¶ 4).

In July of 2017, Judy Rostucher was Dr. Krug's administrative assistant and

Angela Crossley was President Hanna's administrative assistant. (*Compare* Doc. 80

*with* Doc. 89, ¶ 5).

During the 2017-2018 academic year, Robert Wislock was Bloomsburg

University's Title IX Coordinator. (*Compare* Doc. 80 *with* Doc. 89, ¶ 6).

Terry and JoAnn Zeigler were benefactors of Bloomsburg University, and the

business school is formally named after them as the Terry and JoAnn Zeigler

College of Business, which is sometimes also referred to as the Zeigler College of

Business or the ZCOB. (*Compare* Doc. 80 *with* Doc. 89, ¶ 7).

Hanna had asked Terry Zeigler to work with Dr. Krug to professionally

develop Dr. Krug.

Andrew Lehman was chief counsel for defendant PASSHE from July 2013 until April 8, 2022. (*Compare* Doc. 80 *with* Doc. 89, ¶ 9).

On September 14, 2016, in accordance with Article 15 of the Association of Pennsylvania State College and University Faculties (APSCUF) the Pennsylvania State System of Higher Education (State System) (referred to herein as the "CBA"), then President of the University David Soltz awarded Dr. Krug tenure. (*Compare* Doc. 80 *with* Doc. 89, ¶ 10).

Article 15 of the CBA (Plaintiff's Exhibit 173), provides that "[t]enure shall mean the right of a FACULTY MEMBER to hold his/her position and not to be removed therefrom except for just cause as hereinafter set forth in this Article or except as provided elsewhere in this Agreement." (*Compare* Doc. 80 *with* Doc. 89, ¶ 11).

On March 9, 2018, defendant Hanna wrote a letter Dr. Krug which indicated that Dr. Krug was an "at will employee." (Doc. 89, ¶ 12).

On March 21, 2018, defendant Krause terminated Dr. Krug. (*Compare* Doc. 80 *with* Doc. 89, ¶ 13).

Dr. Krug's father is Alan Krug, who holds a Ph.D. with a career in public policy and legislative consulting. Dr. Alan Krug was a lobbyist within the Pennsylvania Legislature, and friendly with many legislators, including legislators who were PASSHE board members. (*Compare* Doc. 80 *with* Doc. 89, ¶ 19).

6

Dr. Krug told his father Alan Krug about a complaint Ms. Crossley raised against President Hanna. (*Compare* Doc. 80 *with* Doc. 89, ¶ 20). The extent of Dr. Krug's conversation with his father is disputed.

On November 13, 2017, Angela Crossley, accompanied by Dr. Krug and Judy Rostucher, went to the Social Equity Office and reported alleged misconduct by President Hanna to Robert Wislock. (*Compare* Doc. 80 *with* Doc. 89, ¶ 27).

Alan Krug emailed two members of the PASSHE Board of Governors and revealed that a complaint had been leveled against President Hanna. (*Compare* Doc. 80 *with* Doc. 89, ¶ 41).

On January 5, 2018, Dr. Krug and Judy Rostucher went to the Social Equity Office to file their own complaints. (*Compare* Doc. 80 *with* Doc. 89, ¶ 51).

The complaints alleged that administrative assistants to President Hanna and Provost Krause, at President Hanna's and/or Provost Krause's direction, were spreading rumors that Dr. Krug and Judy Rostucher were having a sexual affair, thus creating a hostile work environment in violation of Title IX for both Dr. Krug and Judy Rostucher, in retaliation for their support of Angela Crossley. (*Compare* Doc. 80 *with* Doc. 89, ¶ 52).

In their interview with Wislock, Dr. Krug and Judy Rostucher specifically complained that various employees for defendants Krause and Hanna were spreading rumors that Dr. Krug and Ms. Rostucher were having a sexual affair.

(*Compare* Doc. 80 *with* Doc. 89, ¶ 53).

William Helzlsouer was appointed by PASSHE to investigate Dr. Krug's and Judy Rostucher's complaints. (*Compare* Doc. 80 *with* Doc. 89, ¶ 54).

Helzlsouer's report confirmed that staff members for Krause and Hanna were "passing" "unprofessional" "rumors" of a sexual affair between Dr. Krug and Judy Rostucher. (*Compare* Doc. 80 *with* Doc. 89, ¶ 55).

On January 11, 2018, less than one week after Dr. Krug and Judy Rostucher filed their Title IX complaints, Dr. Krug received a letter from BU HR director Jerry Reed informing him that PASSHE had initiated an investigation (the "Ballard Spahr Investigation") into Dr. Krug's conduct as Dean of the College of Business, purportedly to investigate "the disclosure of personnel matters not of public concern and information protected by the Family Education Rights and Privacy Act, among other issues…." (*Compare* Doc. 80 *with* Doc. 89, ¶ 56).

PASSHE'S chief counsel, Andrew Lehman, decided to retain the law firm Ballard Spahr to act as investigators on PASSHE's behalf. (*Compare* Doc. 80 *with* Doc. 89, ¶ 57).

In the letter Dr. Krug was directed to attend an interview with Olabisi Ladeji Okubadejo and Meredith Swartz Dante ("the Ballard Spahr attorneys"). (*Compare* Doc. 80 *with* Doc. 89, ¶ 58).

Provost Krause emailed Dr. Krug advising him of the potential for

8

termination of his employment if Dr. Krug did not follow the directive to participate in the Ballard Spahr interview. (*Compare* Doc. 80 *with* Doc. 89, ¶ 59).

Via email, the Ballard Spahr attorneys informed Brian Caffrey, counsel obtained by Dr. Krug, that Dr. Krug was required to attend the interview without counsel. (*Compare* Doc. 80 *with* Doc. 89, ¶ 60).

The Ballard Spahr interview of Dr. Krug was set for January 26, 2018. (*Compare* Doc. 80 *with* Doc. 89, ¶ 62).

Dr. Krug also emailed Andrew Lehman, Chief Legal Counsel for PASSHE, writing "As a violation of FERPA is a federal crime [sic] and I am being targeted pursuant to this statute, do I not have any right to due process, including being officially notified as to what is the specific charge and who is the accuser?" Dr. Krug further informed Mr. Lehman that "I was threatened with termination should I fail to attend and 'cooperate.'" (*Compare* Doc. 80 *with* Doc. 89, ¶ 65).

The Ballard Spahr Report concluded that Dr. Krug "made disclosures of private personnel information and confidential student information" to four individuals ("his father, J. Zeigler, E. Evans, and N. Guiffre"). (*Compare* Doc. 80 *with* Doc. 89, ¶ 68).

The Ballard Spahr attorneys did not interview Angela Crossley, Alan Krug or Angela Johnston. (Doc. 89, ¶ 69).

The Ballard Spahr Report reported that BU Vice President of Advancement

Erik Evans's asserted that Dr. Krug disclosed the pending case to Erik Evans and to BU donor John Braganini, causing Braganini to rescind an upcoming gift. (*Compare* Doc. 80 *with* Doc. 89, ¶ 72).

Regarding Evans, the Ballard Spahr report concluded that in a December 18, 2017 phone call, Dr. Krug improperly disclosed Angela Crossley's complaintagainst Hanna to Erik Evans, of which Evans had no prior knowledge. (*Compare* Doc. 80 *with* Doc. 89, ¶ 72).

Defendant President Hanna chose defendant Krause as the decision maker in the disciplinary matter against Dr. Krug. (Doc. 89, ¶¶ 76-77). Dr. Krug complained to PASSHE Chief Counsel Lehman that he thought Krause was biased against him. *Id*.

Following the release of Ballard Spahr's final report on March 7, 2018, a Pre-Disciplinary Conference was scheduled for Friday, March 9, 2018. (*Compare* Doc. 80 *with* Doc. 89, ¶ 78).

Krause inadvertently sent Dr. Krug the full Ballard Spahr report rather than a summary report. (Doc. 89, ¶ 79).

Provost Krause, PASSHE Assistant Vice Chancellor for Employee and Labor Relations Lisa Sanno, and HR specialist Aubry McConnell were present for the Pre-Disciplinary Conference. (*Compare* Doc. 80 *with* Doc. 89, ¶ 80).

During the Pre-Disciplinary Conference Dr. Krug, via an opening statement,

objected to Provost Krause being appointed as "arbiter." (*Compare* Doc. 80 *with* Doc. 89, ¶ 82).

At the Pre-Disciplinary Conference, Dr. Krug stated: "I want to go on record stating, you [Krause] are not the appropriate person to determine my career since you have been taking actions that amount to retaliation." Krause responded that Hanna had delegated to Krause the power to determine if disciplinary action was warranted against Dr. Krug. (*Compare* Doc. 80 *with* Doc. 89, ¶ 86).

When Dr. Krug again protested that "I need to go on record stating this is not a fair process," Sanno replied, "You are not entitle [sic] to representation in an administration proceeding. This is an administration proceeding being conducted by the provost not a legal proceeding, and you are not entitled to representation." By contrast, at Hanna's Pre-Disciplinary Conference following PASSHE's investigation into Angela Crossley's complaint against Hanna, Hanna was permitted to be represented by personal counsel. (*Compare* Doc. 80 *with* Doc. 89, ¶ 87).

The Ballard Spahr attorneys reported that Dr. Krug admitted to disclosing the existence of Angela Crossley's Complaint to his sister and father. (*Compare* Doc. 80 *with* Doc. 89, ¶ 88). Dr. Krug contends, and defendants deny, that Ballard Spahr's report about Dr. Krug's alleged admission was false. *Id*.

At the Pre-Disciplinary Conference, when Sanno and Krause questioned Dr. Krug about his father's knowledge of Judy Rostucher's Title IX complaint, Dr.

Krug explained that he told his father about some of the facts establishing a basis for Dr. Krug's and Judy Rostucher's Title IX complaints before they formally filed. Dr. Krug specified that "There has not been any conversation with my father after I filed." (*Compare* Doc. 80 *with* Doc. 89, ¶ 90).

Bloomsburg University's then-existing Harassment and Discrimination Policy provided that confidentiality obligations attached "during the complaint process," not before any formal complaint had been made. (Plaintiff's Exhibit 14, PRP 4789 – Harassment and Discrimination Policy, p. 7). (*Compare* Doc. 80 *with* Doc. 89, ¶ 91).

Dr. Krug explained to Sanno and Krause that the conversation he had with Nick Giuffre referencing the alleged misconduct by Hanna happened on November 11, 2017, before Angela Crossley filed a Title IX Complaint. (Plaintiff's Exhibit 65, Interview with Dr. Jeffrey Krug Disclosed Confidential information March 9, 2018, KRUG.DEF 12640). (*Compare* Doc. 80 *with* Doc. 89, ¶ 92).

Dr. Krug also explained to Sanno and Krause that the conversation he had with the Zeiglers referencing Angela Crossley's allegations against Hanna took place before any Title IX complaint was filed. (Plaintiff's Exhibit 65, Interview with Dr. Jeffrey Krug Disclosed Confidential information March 9, 2018, KRUG.DEF 12640). (*Compare* Doc. 80 *with* Doc. 89, ¶ 93).

In a March 12, 2018 written memo sent to Provost Krause, Ms. Sanno,

William Helzlsouer, and Ms. McConnell from BU HR, Dr. Krug again objected to

Provost Krause serving as the decision-maker in his case. Dr. Krug again raised his

concern that Krause retaliated against him because he supported Angela Crossley

when she filed a complaint against President Hanna.

On March 19, 2018, Dr. Krug sent an email to PASSHE Interim Chancellor

Karen Whitney to request that she appoint a decision-maker outside of BU,

including as an attachment his March 12, 2018 Memo. (Plaintiff's 52, March 19,

2018 Email from Jeffrey Krug to Chancellor Whitney regarding Complaint).

(*Compare* Doc. 80 *with* Doc. 89, ¶ 96).

Chancellor Whitney did not respond.  Instead, the following day PASSHE

Chief Legal Counsel Andrew Lehman wrote back:

**"Your request and the information contained in your March 9, 2018
email [to Dr. Whitney] have been carefully reviewed and no conflict of
interest has been identified. Consistent with Board of Governors Policy
1984-14-A, academic deans are to be supervised by, accountable to and
evaluated by the appointing authority or an appropriate supervisor. The
State System is without authority to interfere with the statutory authority
of the President to appoint and manage employees under Act 188,
including any delegation of that authority to another university
employee."**

(Plaintiff's Exhibit 53, March 20, 2018 email from Andrew Lehman to Jeffrey

Krug regarding Complaint).  (*Compare* Doc. 80 *with* Doc. 89, ¶ 97).

Dr. Krug responded to Mr. Lehman via email, writing that "My memorandum

was sent to the Chancellor, who has oversight over the PASSHE system, including all personnel." (Plaintiff's Exhibit 54, March 20, 2018 email from Jeffrey Krug to Andrew Lehman). (*Compare* Doc. 80 *with* Doc. 89, ¶ 98).

Mr. Lehman did not respond to Dr. Krug's March 20, 2018 email. (Dr. Jeffrey Krug Deposition, 75:22-75:24). (*Compare* Doc. 80 *with* Doc. 89, ¶ 99).

The following day, Dr. Krug received a letter from Provost Krause terminating Dr. Krug's employment at BU. (Plaintiff's Exhibit 50, March 21, 2018 Correspondence to Jeffrey Krug from James K. Krause, Ed.D., page 6). (*Compare* Doc. 80 *with* Doc. 89, ¶ 100).

Dr. Krug was walked off campus in front of faculty and staff, (Dr. Jeffrey Krug Deposition, 85:4-85:8). (*Compare* Doc. 80 *with* Doc. 89, ¶ 101).

D. <u>A brief description of damages, including, where applicable:</u>
Defendants are not claiming damages.

E. <u>Names and addresses of witnesses, along with the specialties and qualifications of experts to be called.</u>

Defendants plan to call the following witnesses:
- Dr. Jeffrey Krug - Plaintiff
- Dr. Bashar Hanna—President of Bloomsburg University at the time of the underlying incident.
- James Krause—Interim Provost of Bloomsburg University at the time of the underlying incident.
- Robert Wislock—Social Equity Director of Bloomsburg University at the time of the underlying incident
- Andrew Lehman—Chief Counsel of PASSHE at the time of the underlying incident

14

- Jerry Reed: Director for Human Resources and Labor Relations at Bloomsburg University at the time of the underlying incident

F.  Summary of testimony of each expert witness: N/A for Defendants

G.  Special comment about pleadings and discovery, including depositions and the  exchange of medical reports: None.

H.  <u>A summary of legal issues involved and legal authorities relied upon.</u>

**(1.)    Whether there is a causal connection between Krug's protected activities and his termination.**

Pursuant to Title VII, it is an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). To prove a prima facie case of retaliation under Title VII, plaintiff must demonstrate that (1) he engaged in protected activity, (2) the employer took adverse employment action against him, and (3) there was a causal connection between his protected activity and the adverse employment action. *Moore v. City of Phila.*, 461 F. 3d 331, 340-41 (3d. Cir. 2006). A plaintiff "making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." Nassar, 133 S.Ct. at 2534. If the plaintiff succeeds in establishing a prima facie case of retaliation, the familiar McDonnell-Douglas

15

burden-shifting framework applies wherein the burden of persuasion remains on the plaintiff. *Woodson v. Scott Paper Co*., 109 F.3d 913, 920 (3d Cir. 1997). Title VII's retaliation framework "generally governs" Title IX retaliation claims, *Emeldi v. Univ. of Oregon*, 698 F.3d 715, 723–25 & n.3 (9th Cir. 2012), and claims brought under the Pennsylvania Human Relations Act (PHRA). *Fogleman v. Mercy Hospital*, Inc. 91 F.Supp. 2d 788 (M.D. Pa. 2000) Rev'd on other grounds, 283 F.3d 561 (3d Cir. 2002).

Pennsylvania's Whistleblower Law, 43 P.S. § 1421, et seq. protects public employees who report suspected legal violations from being discharged by their employers as a result of that reporting. 43 P.S. § 1423(a). The Law states: "No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste." 43 P.S. § 1423(a).

Plaintiff has the burden of proving, by a preponderance of the evidence, that prior to the alleged retaliation, he had reported or was about to report in good faith an instance of wrongdoing or waste to the appropriate authority. 43 P.S. § 1424(b). A plaintiff must also present some evidence of a causal connection between his

16

report and the alleged retaliation. *Golaschevsky v. Dept. of Envtl. Prot.*, 720 A.2d 757, 759–60 (1998). If the plaintiff satisfies these requirements, the burden shifts to the defendant employer to show its actions were lawful. *O'Rourke v. Dept. of Corrections*, 778 A.2d 1194, 1200 (2001). The defendant is not liable "if the defendant proves by a preponderance of the evidence that the action by the employer occurred for separate and legitimate reasons, which are not merely pretextual." 43 Pa. Stat. Ann. § 1424(c).

Krug's Whistleblower claim fails for the same reason as his Title VII, Title IX, and PHRA retaliation claims: he cannot establish a causal connection between his assistance of Crossley with her complaint or his own complaint of retaliation with his termination for cause. Krug was terminated because he violated federal law and BU policy.

> **(2.)** **Whether Krug's speech was protected by the First Amendment and if there is a causal connection between Krug's speech and any retaliatory conduct.**

"[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). To prevail on a First Amendment retaliation claim, Krug must prove: (1) he engaged in activity protected by the First Amendment, (2) the government responded with retaliatory action sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) the

17

protected activity was the cause of the retaliatory action. *Lauren W. ex rel. Jean W. v. Deflaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003). A defendant may rebut a claim of retaliation by demonstrating that the adverse action would have been taken even in the absence of the protected activity. *Id*. "A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241–42 (3d Cir. 2006) (citing *Garcetti*, 547 U.S. at 419). Krug alleges that he was retaliated against for assisting Crossley and for complaining about retaliationIn addition, the Defendants would have terminated Krug even in the absence of the protected activity because he disclosed confidential information to individuals.

> **(3.)    Whether Krug has a property interest in his employment and if Defendants damaged his reputation in order to Defendants liable under Section 1983 for violations of the Procedural Due Process of the Fourteenth Amendment.**

To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or

property, and (2) the procedures available to him did not provide due process of law. *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006)) (quotation marks omitted).

Krug served in an at-will management position the entire time he worked at BU and was never placed into a bargaining unit vacancy by the President. As a result, he never became a member of the bargaining unit. The dean serves at the pleasure of the President pursuant to PASSHE Board of Governors' policy 1984-14-A. That policy states that such an appointment is "at will." Because Krug served in an at-will capacity, he had no legitimate expectation of continued employment. Indeed, when Krug attempted to file a union grievance with respect to his termination, APSCUF officials determined he lacked standing to file a grievance under the APSCUF-PASSHE CBA because he was "never a member of the bargaining unit." This was confirmed by Jerry Reed, Director for Human Resources and Labor Relations at BU. As Krug was an at-will management employment throughout the entirety of his employment at BU, he has no property interest in his employment.

To make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest. This is known as the "stigma-plus" test. In the public employment context, the "stigma-plus" test has been applied to mean that when an

employer "creates and disseminates a false and defamatory impression about the employee in connection with his termination," it deprives the employee of a protected liberty interest. *Codd v. Velger*, 429 U.S. 624, 628 (1977). When such a deprivation occurs, the employee is entitled to a name-clearing hearing. To satisfy the "stigma" prong of the test, it must be alleged that the purportedly stigmatizing statements were made publicly and were false. *Hill v. Borough of Kutztown*, 455 F.3d 225, 235–36 (3d Cir. 2006). See also, *Codd v. Velger*, 429 U.S. 624 at 627-629 (1977) (cleaned up); *Fraternal Order of Police v. Tucker*, 868 F.2d 74, 82–83 (3d Cir.1989).

Krug cannot demonstrate that Hanna or Krause made any public statements about Krug's termination to damage his reputation.  In fact, it was Krug who made his termination media fodder and has since written a book about it.  There is no evidence Hanna or Krause were involved in the spreading of rumors about Krug; therefore, Krug cannot prove the "stigma" portion of the stigma-plus test and his claim fails.

I.  <u>Stipulations desired.</u>

None.

J.  <u>Estimated number of trial days.</u>

10.

20

K.  Any other matter pertinent to the case to be tried.

None.

L.  Pursuant to Local Rule 16.3 append to this memorandum a
prenumbered  schedule of exhibits, with brief identification of each, on the
clerk's Exhibit Form.

Pursuant to Local Rule 16.3 a list of pre-numbered schedule of exhibits along
with a brief identification of each is attached on the clerk's Exhibit Form.

M.  Append any special verdict questions which counsel desires to submit.

None.

N.    Statement that the Person with Settlement Authority has been notified

The person with settlement authority has been notified of the requirements
set forth in Local Rule 16.2.

N.  Certificate must be filed as required under Local Rule 30.10 that counsel
have  met and reviewed depositions and videotapes in an effort to eliminate
irrelevancies, side comments, resolved objections, and other matters not necessary
for consideration  by the trier of fact.

Counsel have met and reviewed John Braganini's deposition in lieu of trial
testimony transcript in order to resolve several objections. The parties were able to
resolve all-but-one objection issues. The Defendants request Honorable Judge
Wilson to rule on the one hearsay objection.  In addition, Defendants have a

pending Motion *in Limine* regarding the relevancy of Braganini's testimony.

Defendants may offer discovery depositions for impeachment or refreshment of

recollection but will not enter those depositions into evidence, nor will they be

provided to the jury.

Respectfully submitted,

**MICHELLE A. HENRY**
**Attorney General**

By:    *s/ Christine C. Einerson*
**CHRISTINE C. EINERSON**
**Deputy Attorney General**
**Attorney ID 326729**

**Office of Attorney General**
**15th Floor, Strawberry Square**
**Harrisburg, PA 17120**
**Phone: (717) 574-1803**

**Counsel for Defendants**

ceinerson@attorneygeneral.gov

**Date:  July 26, 2024**

22

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JEFFREY KRUG,** | : | |
| **Plaintiff** | : | |
| | : | **No. 4:18-CV-1669** |
| **v.** | : | |
| | : | **Judge Wilson** |
| **BLOOMSBURG UNIVERSITY,** | : | |
| **PENNSYLVANIA STATE** | : | **Electronically Filed Document** |
| **SYSTEM OF HIGHER** | : | |
| **EDUCATION, BASHAR HANNA** | : | *Complaint Filed 08/22/18* |
| *and* **JAMES KRAUSE,** | : | |
| | : | |
| **Defendants** | : | |

## CERTIFICATE OF SERVICE

I, Christine C. Einerson, Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on July 26, 2024, I caused to be served a true and correct copy of the foregoing document titled Defendants' Pretrial Memorandum to the following:

## VIA ELECTRONIC FILING

**Barry H. Dyller, Esquire**
**Dyller & Solomon, LLC**
**88 North Franklin Street**
**Gettysburg House**
**Wilkes Barre, PA  18701**
**barry.dyller@dyllerlawfirm.com**
*Counsel for Plaintiff*

**Patrick T. O'Connell, Esquire**
**Law Office**
**24 West Main Street**
**Bloomsburg, PA  17815**
**pat@oconnell-law.com**
*Counsel for Plaintiff*

_s/ Christine C. Einerson_
**CHRISTINE C. EINERSON**
Deputy Attorney General